# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-0891V
UNPUBLISHED

|  |  |
|---|---|
| PAUL BISHOP,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: March 14, 2023<br><br>Special Processing Unit (SPU); Findings of Fact; Site of Vaccination; Statutory Six Month Severity Requirement; Tetanus, Diphtheria, acellular Pertussis (Tdap) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Matthew F. Belanger*, Faraci Lange LLP, Rochester, NY, *for Petitioner.*

*Naseem Kourosh*, U.S. Department of Justice, Washington, DC, *for Respondent.*

### FINDINGS OF FACT[1]

On February 8, 2021, Paul Bishop filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving a tetanus, diphtheria, acellular pertussis ("Tdap") vaccine on March 12, 2020. Petition at 1, ¶¶ 1-2. He maintains that his "symptoms have persisted for more than six months as required to establish

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

entitlement to compensation." *Id.* at ¶ 2. Petitioner insists that the symptoms he complained of in May 2022, and later, reflect a continuation of his SIRVA injury. *Id.* at ¶¶ 13-15.

For the reasons discussed below, I find Petitioner received the Tdap vaccine in his left arm as alleged, and has continued to suffer the residual effects of his alleged SIRVA for more than six months. *See* Section 11(c)(1)(D)(i) (statutory six-month severity requirement). However, any damages obtained in this case must take into account Petitioner's inability to connect treatment received in May 2022 (nearly two years after the severity "deadline") with his initial SIRVA.

## I.     Relevant Procedural History

Within a week of filing his Petition, Mr. Bishop filed the affidavit and medical records required under the Vaccine Act. Exhibits 1-7, filed Feb. 15, 2021, ECF No. 6; *see* Section 11(c). On May 5, 2021, the case was activated and assigned to the Special Processing Unit (OSM's process for attempting to resolve certain, likely-to-settle claims). ECF No. 10.

Over the subsequent five months, Petitioner filed additional vaccine documentation, and updated medical records. Exhibits 8-10, ECF Nos. 13, 20. On December 28, 2021, Respondent charged that additional documentation regarding the site and method of administration was needed, and that Petitioner had not established that he suffered the residual effects of his alleged SIRVA injury for more than six months. ECF No. 23. Thereafter, Petitioner filed a supplemental affidavit and updated medical records. Exhibits 11-13, ECF Nos. 25, 29.

On August 18, 2022, Respondent filed his Rule 4(c) Report, opposing compensation in this case. ECF No. 33. Because Petitioner showed significant improvement by his last physical therapy ("PT") session on August 31, 2020, and failed to mention any left shoulder pain when seeking treatment for other conditions during a greater than 20-month period (from August 31, 2020, through May 3, 2022), Respondent argues that he has failed to satisfy the statutory six-month requirement. *Id.* at 8-11. Other than mentioning that the vaccine record does not indicate the site of vaccination (*id.* at 3), he does not contend that Petitioner's evidence is lacking on this issue.

## II.    Issue

At issue is whether Petitioner continued to suffer the residual effects of the SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month severity

requirement). Although Respondent no longer appears to be contesting the situs issue, I find a ruling on this issue is also appropriate.

### III.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

 The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y*

*of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.  Findings of Fact

I make these situs and severity findings after a complete review of the record to include all medical records, statements, declarations, briefing, and additional evidence filed. Specifically, I base the findings on the following evidence:

- Prior to vaccination, Petitioner (then 47 years old and a paramedic) suffered from common conditions and illnesses, including right knee pain since 2012, for which he underwent surgery in 2019. Exhibit 3 at 732-33, 741.

- Petitioner received the Tdap vaccine at an appointment with his primary care provider ("PCP") on March 12, 2020. Exhibit 3 at 736, 746. The vaccine record does not indicate the site or method of vaccination. *Id.*

- Nine days later, on March 21st, Petitioner emailed his PCP, complaining that his "arm is still quite sore and certain motions are painful to the point of difficulty – such as lifting the arm up to the level of the shoulder or extending it out any angle." Exhibit 7 at 4-5. Recalling that the nurse administered the

4

vaccine higher than normal but acknowledging that it had been ten years since his last Tdap vaccine, he asked if his pain was normal. He added that he had no redness, swelling, or other signs of infection. *Id.* at 5. His PCP replied that he should take over the counter pain medication and should come to the office if not resolved within two to three days. *Id.* at 3.

- Slightly more than two weeks later, on April 6th, Petitioner again emailed his PCP regarding his left arm pain, indicating he had finished all the prescribed prednisone[3] which reduced his pain to "almost nothing" for a few days but caused him to gain weight. Exhibit 7 at 3. Describing his pain as a constant ache that worsened with movement "such as lifting, doing yoga, or holding the dog's leash," he asked if he could use the diclofenac gel he had previously applied to his knee. *Id.* The PCP replied in the affirmative, asked if he needed a prescription for additional gel, instructed him to come to the office if not better in a week, and suggested a CT scan or MRI may be needed. *Id.* It appears the PCP prescribed additional diclofenac gel the next day. Exhibit 6 at 8.

- On April 22nd, Petitioner emailed his PCP a third time, complaining of continued and regular left upper arm and shoulder/neck pain, despite using the diclofenac gel for the last two weeks. Exhibit 7 at 2. Although he attributed some of his shoulder/neck pain to "working at home," he reported that he "still ha[d] pain near the site of the injection and seemingly referring from there up into the shoulder/neck." *Id.* Stating that he normally would ask for an appointment, imaging, and physical therapy ("PT"), he indicated he was unsure of the appropriate next steps given the current worldwide COVID pandemic. Replying that he was still seeing acute patients, the PCP offered options of an appointment with him, PT, or a referral to an orthopedist. *Id.*

- On May 5th, Petitioner participated in a telephonic appointment with one of the orthopedists recommended by his PCP. Exhibit 3 at 767. He reported left shoulder pain after receiving a tetanus shot in March – worsening with overhead movement but unaccompanied by numbness or tingling. *Id.* The orthopedist opined Petitioner was likely suffering from left shoulder rotator cuff tendinitis and impingement syndrome and prescribed PT. *Id.*

---

[3] It appears the PCP prescribed 10 prednisone tablets – 20 mg each, on March 27, 2020. Exhibit 6 at 8.

5

- At his initial PT session on May 19th, Petitioner complained of left shoulder pain after receiving a wrong placement of a tetanus shot in his humeral head. Exhibit 3 at 785. Describing this pain as throbbing and shooting down his arm from the neck region, he rated its severity as currently two out of ten – ranging from one at best and six at worst. *Id.* Upon examination, he exhibited some mild limitations in range of motion ("ROM"). *Id.* at 786. The findings were determined to be consistent with left shoulder impingement and possible rotator cuff tendonitis. *Id.*

- At his next PT session on May 27th, Petitioner reported improvement in the intensity and frequency of his pain but increased pain after driving for twelve hours in one day and attempting to spread mulch. Exhibit 3 at 804. He was observed to have smoother movement and increased ROM and strength when performing the designated exercises. *Id.*

- When Petitioner returned to the orthopedist on June 2nd, he reported improvement in his symptoms after attending PT, but still "some intermittent discomfort related to activity" and endurance. Exhibit 3 at 818. He was noted to have full ROM but pain at the limits. *Id.* at 819. Opining that Petitioner should continue to show improvement with further PT, the orthopedist suggested a steroid injection thereafter. However, he recognized Petitioner's reluctance to pursue that course of treatment due to his earlier adverse reaction to the prescribed Medrol Dosepak. *Id.*

- During six additional PT sessions in June through August 2020, Petitioner continued to report intermittent and mild to no pain which increased with activities such as driving. Exhibit 3 at 836-38, 852-54, 866-89, 906-08, 938-40, 983-84. At his last PT session on August 31st – 12 days before the six-month mark - Petitioner reported pain at a level of one out of ten. He further reported that he "only notices some mild shoulder pain when driving for longer than a few hours or pushing himself out of the ambulance." *Id.* at 983.

- Throughout the remainder of 2020 and 2021, Petitioner attended nine appointments with specialists for treatment of a variety of conditions without any mention of left shoulder pain. Exhibit 9. At his annual visit with his PCP on March 17, 2021, he reported he was doing well except for some family matters. *Id.* at 86. There is no mention of left shoulder pain in this record. *Id.* at 75-103.

- On May 19, 2022 – more than 20 months after his last session in late August 2020, Petitioner returned to PT, reporting a recent flare up of his left shoulder pain. Exhibit 12 at 1. Reporting pain which ranged from zero to six out of ten, he indicated that he noticed his pain "for the past few weeks," especially when working as a paramedic, moving a stretcher, or transferring a patient. *Id.*

Given the lack of situs designation in the vaccine documentation and dearth of evidence supporting an alternative site, Petitioner's consistent reports of left shoulder following the Tdap vaccine beginning only nine days post-vaccination are sufficient to support his assertion that he likely received the Tdap vaccine in his *left* arm, as alleged. While these entries were based upon information provided by Petitioner, they still should be afforded greater weight than more current representations, as they were uttered contemporaneously with Petitioner's injury for the purposes of obtaining medical care.[4]

Similarly, there is sufficient evidence to support Petitioner's contention that he suffered the residual effects of his alleged SIRVA injury for more than six months. To satisfy the Vaccine Act's severity requirement in this case, Petitioner must show that he suffered symptoms of his alleged SIRVA beyond September 12, 2020. The above medical entries show that Petitioner was experiencing continued, albeit mild, symptoms of his alleged left shoulder injury at his last PT session on August 31, 2020 – only twelve days prior to the six-month mark. The level of his pain was one out of ten, and he continued to experience pain primarily when driving for long periods of time and with movement. Given that his symptoms remained at this mild level throughout PT sessions in June through August, it is reasonable to conclude that Petitioner's symptoms would have lasted at least through September 12th – less than two weeks thereafter – even if there is not a medical record specifically from that date or close to it.

However, Petitioner has failed to establish that the pain he experienced *nearly* two years later, in May 2022, was a continuation of his earlier left shoulder pain and potential SIRVA injury. During this significant gap in treatment – from late August 2020 through May 2022, Petitioner made no mention of left shoulder pain. And when seeking treatment in May 2022, he reported that he had noticed the pain only for the past few weeks. Petitioner has failed to provide sufficient evidence to connect his later symptoms to the SIRVA injury he is alleged to have suffered in early 2020.

---

[4] The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied <u>to</u> or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by Petitioner.

### V. Conclusion and Scheduling Order

Although the mild, intermittent nature of Petitioner's pain does not prevent him from satisfying the Vaccine Act's severity requirement, it is relevant when determining any compensation awarded. In light of my findings of fact, Petitioner should forward a *reasonable* demand and supporting documentation to Respondent, and Respondent should consider how he intends to proceed.

**The Parties shall file a joint status report updating me on their efforts to informally resolve this case and proposing their preferred next steps by no later than Friday, April 28, 2023**.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
